UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 5:16-0028-JMH-MAS-1 |
| v. | ) | and |
| | ) | Civil Action No. |
| JAMES FREDERICK REBMANN, | ) | 5:19-0295-JMH-MAS |
| | ) | |
| Defendant/Movant. | ) | |

### REPORT & RECOMMENDATION

This matter is before the undersigned on Petitioner James Frederick Rebmann's ("Rebmann") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Rebmann alleges his counsel was ineffective. [DE 60]. The United States responded in opposition [DE 65], and Rebmann filed a reply [DE 66]. After reviewing the record in its entirety, the Court recommends Rebmann's motion be denied for the reasons stated below.

### I.   RELEVANT FACTUAL BACKGROUND

On April 18, 2016, Rebmann appeared before the Court on an indictment charging him with the distribution of a mixture or substance containing fentanyl, resulting in an overdose death in another under 21 U.S.C. § 841(a)(1). [DE 54; DE 1 (Indictment)]. Because the crime alleged caused an overdose death, the crime carried enhanced penalties. *See* 21 U.S.C. § 841(1)(a); 21 U.S.C. § 846.

On August 15, 2016, Rebmann pleaded guilty to the single count of the Indictment and knowingly entered into a plea agreement. [DE 23 (Rearraignment); DE 24 (Plea Agreement)]. In return, the United States agreed to refrain from filing a 21 U.S.C. § 851 enhancement. [DE 24, at Page ID # 49 (Plea Agreement)]. The plea agreement recommended, with a reduction for

1

acceptance of responsibility, a base offense level of 35. [*Id.* at Page ID # 50]. Once adjusted for Rebmann's statutory mandatory minimum sentence, his guideline range was 240 to 293 months. This recommendation, however, was non-binding. [*Id.*].

Prior to final sentencing, the United States objected to the base offense level in the plea agreement. [DE 31]. The United States explained they had made a calculation error in not considering Rebmann's prior heroin possession charge as a "similar offense" under U.S. Sentencing Guidelines Manual § 2D1.1(a)(1). The new base offense level would result in a guideline range of 360 months to life. [DE 41, at Page ID # 119].

At the final hearing, both the United States and Rebmann's counsel, Andrew Stephens ("Stephens"), supported an adherence to the original base offense level offered in the plea agreement. [DE 42, at Page ID # 121-122]. Nonetheless, because the plea agreement was non-binding, the Court found enhancement of Rebmann's base offense level necessary and sentenced him to 360 months of imprisonment. [DE 38 (Judgment)].

Rebmann appealed to the Sixth Circuit Court of Appeals. [DE 39]. The Sixth Circuit affirmed the District Court's decision. [DEs 53-54]. Finally, Rebmann's subsequent petition for writ of certiorari to the Supreme Court of the United States was denied. [DEs 55, 57]. Rebmann then timely filed the present Motion to Vacate, Set Aside, or Correct a Sentence on July 24, 2019. [DE 60].

## II.  ANALYSIS

In his motion, Rebmann advances a single argument: Rebmann contends that his counsel was ineffective for failing to fully advise him of possible alterations to his guideline range causing him to "bypass trial and enter into a plea that he otherwise would not have accepted." [DE 60, at Page ID # 222]. The Court finds Rebmann's argument unpersuasive.

A.     **INEFFECTIVE ASSISTANCE OF COUNSEL**

To succeed on a § 2255 motion, petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). One such possible claim of constitutional error is a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on a claim of ineffective assistance of counsel, petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to said deficiency. *Id*. at 687. Deficient performance is shown only through proving "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. A showing of prejudice requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694-95. Petitioner must adequately fulfill both components of the analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004)(quoting *Strickland*, 466 U.S. at 697).

The decision to plead guilty rests with the defendant. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). Counsel, however, has a "clear obligation to fully inform her client of the available options" and failing to do so may violate a defendant's right to effective assistance of counsel. *Id.* at 552. Counsel has a "paramount" duty to "ensure that the client's decision is as informed as possible." *Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002). A defendant, however, has the burden of showing more than "merely [] telling the court now that [he] would have gone to trial then if [he] had gotten different advice." *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016); *see also Moore v. United States*, 676 F. App'x 383, 385-86 (6th Cir. 2017) (stating a

defendant "must demonstrate a reasonable likelihood" that upon receiving proper advice would they would have "rejected the plea and proceeded to trial.").

Also, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy." *Id.* at 74; *see also Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (holding that "the defendant is bound by his statements" during a proper Rule 11 colloquy).

The only evidence offered by Rebmann to show his intention to go to trial was a discussion he claims to have had with Stephens prior to the plea agreement offer. [DE 66-1]. Rebmann states he initially informed Stephens that wanted to go to trial. Rebmann, however, changed his mind after being offered the plea agreement. [*Id.*]. Rebmann asserts that the offer of a "240-to-293 months" guideline recommendation was his "sole motivation for changing [his] mind about going to trial and accepting the plea of guilty[.]" [*Id.*]. Rebmann claims that the possibility of a receiving a twenty-year sentence would have been "endurable" but a thirty-year sentence would have "simply [been] out of the question." [DE 60, at Page ID # 225]. This was "notwithstanding the threat of the § 851 filing." [*Id.*].

Rebmann's plea agreement was non-binding, a fact stated in the document itself. [DE 24, at Page ID # 49]. Rebmann attested to having read the document and having ample opportunity to both review and understand the document with Stephens. [DE 47, at Page ID # 165 (Plea Colloquy at Rearraignment)]. The district judge read all the terms of the plea agreement to Rebmann, stating clearly that the recommendations were not "binding on the court" and that there

4

was "no agreement regarding Mr. Rebmann's criminal history category." [*Id.* at Page ID # 167]. Rebmann agreed those were the terms of the plea agreement he understood and willingly signed. [*Id.* at Page # 169]. The district judge emphasized that the guidelines were a "framework" for the sentencing decision, based upon the nature of Rebmann's offense and his criminal history. [*Id.* at Page ID # 173]. Rebmann's continued acknowledgement that the plea agreement was a recommendation and not binding to the district court's final decision makes his claims of ignorance unconvincing. *Blackledge*, 431 U.S. at 73-74. Thus, Rebmann's claims fall short in meeting the *Strickland* standard for deficient performance. *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) ( stating courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

Likewise, Rebmann also fails to show he was prejudiced by his counsel's decision making. In his reply, Rebmann relies on a handful of cases to show his own self-serving testimony, on its own, is enough to establish actual prejudice. These cases are distinct from Rebmann's situation in ways that are fatal to his arguments. In both *Smith* and *Titlow*,[1] the findings of ineffective assistance of counsel lead to defendants *rejecting* plea deals. This alone makes those cases inappropriate comparisons to Rebmann's situation. First, those defendants never ran through the gauntlet of procedural safeguards highlighted above via the Rule 11 plea colloquy to ensure their decision was made intelligently, knowingly, and voluntarily. *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003); *Titlow v. Burt*, 680 F.3d 577 (6th Cir. 2012), rev'd, 571 U.S. 12 (2013). Second, while receiving a harsher sentence at trial provides a concrete indication of prejudice in comparison

---

I.

[1] The Court also notes that the Sixth Circuit decision in *Titlow* was reversed in *Burt v. Titlow*, 571 U.S. 12 (2013).

5

to a more lenient but rejected plea agreement, the same cannot be said for the loss of a hypothetical "favorable" verdict in a trial that never occurred. *See Smith*, 348 F.3d at 552 ("[o]ther panels in this and other circuits have pointed to the disparity between the plea offer and the potential sentence exposure as strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence.").

While Rebmann also cites *Lee*, a case where the defendant did accept a plea agreement, it too is distinguishable. *Lee v. United States*, 137 S. Ct. 1958 (2017). In *Lee*, the Court noted it was an "unusual circumstance" where it was established via the plea colloquy and testimony that there was a "reasonable probability that [defendant] would have rejected the plea had he known that it would lead to mandatory deportation." *Id.* at 1968-69. The Court found there was "no question that 'deportation was the determinative issue in [defendant]'s decision whether to accept the plea deal.'" *Id.* (citation omitted). Not only is the unique situation of deportation not present in Rebmann's case, but there is also a lack of objective evidence throughout the proceeding stressing a possible guideline minimum of twenty-years being the determinative issue in Rebmann's decision. While Rebmann seems to think his conversation with Stephens before he was offered a plea deal is enough to solidify a *Lee*-esque emphasis on the original guideline minimum, the Court finds this is not enough to show actual prejudice under the highly deferential *Strickland* standard. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under Strickland involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different).

Here, Rebmann was advised multiple times of the non-binding nature of his plea agreement. Both the United States and Stephens petitioned for the original base offense level offered, but as Rebmann was told, the plea only acted as a recommendation. The district court,

6

ultimately, had the final say and sentenced Rebmann based on the nature of the offense and his criminal history, which Rebmann understood would be the basis of said decision. [DE 47, at Page ID # 173]. Rebmann received ample benefit to the plea agreement—a § 851 enhancement would have resulted in a mandatory life sentence of imprisonment. While he now retroactively claims that § 851 notice had little effect on his decision making and it was *solely* the possibility of receiving a twenty-year sentence which motivated him to plea guilty, he provides no evidence to support this claim. Rebmann had to opportunity to take his chances at trial and he knowingly waived that right.

The Court finds Rebmann was fully informed of the plea agreements terms when he pleaded guilty and suffered no actual prejudice from doing so. Accordingly, the Court recommends denial of the motion as Rebmann's arguments fail on the merits.

### III.  EVIDENTIARY HEARING

Rebmann requests an evidentiary hearing based on his claim that he initially wanted to proceed to trial after his first discussion with Stephens about the facts of the case. [DE 66, at Page ID # 250]. It does not matter, however, what Rebmann intended pre-plea agreement; his decision to not plead guilty before receiving any possible benefit does nothing to show Rebmann's motivation or mindset once receiving a plea bargain. Furthermore, Rebmann provided a sworn affidavit reaffirming the claims made in his petition. [DE 66-1]. Thus, a hearing would fail to reveal information not already present in the record and would be inconsequential in the Court's decision-making.

### IV.  CONCLUSION

For the reasons stated herein, the Court recommends the District Court deny Rebmann's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## RECOMMENDATION

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [*See* DE 60]; and

2) the District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 20th day of November, 2019.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge